Gary Minevich, Cal. (SBN #256136)
Minevich Law, APC
21700 Oxnard St, Ste. 950
Woodland Hills, CA 91367
Tel. 818.878.8740
Fax: 818.878.8745
Email: habeas@minevichlaw.com

Attorney for Plaintiff

**DETAINED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nazim RUZIEV,<br><br>Petitioner,<br><br>v.<br><br>James JANECKA, in his official capacity as Warden of the Adelanto ICE Processing Center;<br><br>Thomas P. GILES, Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>Todd BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br><br>Respondents. | Case No.<br><br>A-241-024-957<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief |

# PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF

*(Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief)*

## STATEMENT OF FACTS

1. Petitioner Nazim Ruziev is a native of Tajikistan (then part of the USSR) and a citizen of RUSSIA. He entered the United States at or near San Ysidro, California, on or about March 11, 2023, and was released by the Department of Homeland Security into the interior of the United States, subject to reporting requirements. See Exhibit "A" — Form I-94 and Release Documents.

2. Petitioner and his wife, Valeriia Mikailova (A-244-224-230), fled RUSSIA to escape persecution by the Russian government on account of Petitioner's political opinion. As a result of that persecution, on July 11, 2024, Petitioner submitted a Form I-589 Application for Asylum and for Withholding of Removal as the principal applicant. Petitioner's application includes his wife and the couple's two children, Usman Ruziev (A-244-224-231) and Amina Ruzieva (A-244-224-232), and remains pending. See Exhibit "B" — Form I-589 Application.

3. Petitioner has resided in the United States for approximately three and a half (3.5) years.

4. Petitioner has continuously resided in Santa Barbara, California, within the Central District of California, since shortly after his entry.

5. Prior to his detention, Petitioner was the sole financial provider for his wife and two young children. His wife does not work outside the home because she provides full-time care for

the couple's children, including their son Usman, who has autism and a documented seizure disorder.

6. As a condition of his release, Petitioner was required to report to ICE every month and to complete regular photographic check-ins through the ISAP SmartLINK application on his cellular telephone. Petitioner has fully complied with those reporting requirements at all times since his arrival. Recently, ICE additionally placed a GPS ankle monitor on Petitioner, which he has worn without incident.

7. Over more than three years of monthly reporting, Petitioner never missed a check-in without cause. On the single occasion when Petitioner was unable to appear — because of a medical emergency involving his son — he promptly provided ICE with medical records documenting the emergency, and ICE excused the absence and did not count it as a missed check-in. The complete records of Petitioner's check-ins and compliance are maintained in the ISAP/SmartLINK system and are in Respondents' possession, custody, and control.

8. On August 17, 2026, Petitioner received a telephone call from ICE directing him to appear at the ICE office located at 321 Cortez Circle, Camarillo, California 93012, at 6:00 a.m. the following morning. On August 18, 2026, Petitioner appeared as directed — and was detained by U.S. Immigration and Customs Enforcement ("ICE"). ICE did not serve Petitioner or his counsel with any warrant of arrest, any Notice of Custody Determination (Form I-286), or any other document identifying the statutory basis for, or the reason for, his detention. To date, Respondents have not disclosed the authority under which they purport to detain Petitioner.

9. Petitioner is currently detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, within this district.

*10.* Upon information and belief, ICE may transfer Petitioner to another detention facility. The district court's habeas jurisdiction, once properly acquired, is not defeated by the petitioner's subsequent transfer to another facility or district when an appropriate custodian remains within the court's territorial jurisdiction. *Ex parte Endo, 323 U.S. 283, 304–06 (1944).*

11. Petitioner has no criminal history whatsoever. He has never been arrested, charged, or convicted of any offense. Petitioner has consistently complied with U.S. law and maintained a strong record of personal responsibility.

12. Petitioner has appeared for every ICE appearance he was directed to attend — including the very appearance at which he was detained — and has demonstrated his intention to comply with all court orders and conditions of release, through monthly in-person check-ins, SmartLINK photographic check-ins, and GPS ankle monitoring.

13. Petitioner is in removal proceedings and is pursuing asylum and related protection; no removal order has been entered against him.

14. Petitioner's spouse, Valeriia Mikailova (A-244-224-230), and their two children, Usman Ruziev (A-244-224-231) and Amina Ruzieva (A-244-224-232), are present in the United States. Petitioner's son Usman, age nine, has autism and suffers from a documented seizure disorder: a September 20, 2024 video EEG performed at Cottage Health was abnormal, showing frequent generalized spike and wave discharges and a suspected electroclinical seizure. See Exhibit "C" — Video EEG Report. Petitioner's wife does not work because she provides full-time care for the children, and Petitioner is the family's sole provider. Petitioner's immediate family ties in this country are among the strongest possible

indicators that he will not abscond and will instead remain to pursue his asylum claim and to support his wife and children.

15. Petitioner has now remained in ICE immigration detention since August 18, 2026. His continued confinement separates him from his family, deprives his wife and children — including his disabled son — of their sole provider, threatens his physical and mental health, and has caused and continues to cause serious harm.

16. ICE did not set a bond at the time of Petitioner's detention. Petitioner has not been provided any custody determination, bond hearing, or other individualized assessment of flight risk or danger — either before or since his detention.

17. Petitioner's release into the interior of the United States in March 2023 reflected the government's own determination that his release was warranted and that he presented neither a danger to the community nor an unmanageable flight risk. For approximately three and a half years, Petitioner validated that determination through full compliance with every condition imposed on him — monthly check-ins, SmartLINK photographic reporting, and GPS ankle monitoring.

18. Nothing changed on August 18, 2026 — except that Petitioner did precisely what the government instructed him to do: he appeared at the ICE office at 6:00 a.m. as directed by telephone the previous day. Respondents identified no changed circumstance and no new evidence of dangerousness or flight risk. Respondents offered no lawful justification for detaining him. Petitioner was detained not because of anything he did, but despite his complete compliance.

19. Detaining him without any bond hearing or individualized custody determination rests on no lawful factual or legal predicate and therefore cannot lawfully justify Petitioner's continued civil detention.

20. Respondents now seek to keep Petitioner detained. Respondents do so without regard to Petitioner's personal circumstances or individualized facts. Respondents disregard Petitioner's actual immigration history — his release into the interior, his approximately three and a half years of residence, and his complete compliance with every condition of his release.

21. Respondents cannot evade due process requirements. The U.S. Constitution requires Respondents to provide at least the rights available to Petitioner at the time he filed his application for relief.

22. The Constitution protects Petitioner — and every other person present in this country — from arbitrary deprivations of his liberty and guarantees him due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint [has] always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

23. Petitioner seeks declaratory and injunctive relief to compel his immediate release from the immigration jail where he has been held by DHS since being unlawfully detained, without first being provided a constitutionally adequate hearing to determine whether his incarceration is justified.

24. Petitioner has a protected liberty interest in remaining out of custody. Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. Respondents’ re-detention of Petitioner at an ICE appearance to which he was summoned by telephone — without notice, without changed circumstances, and without any bond hearing or individualized custody determination — denied Petitioner of his due process rights.

25. Absent review in this Court, no other neutral adjudicator will examine Petitioner's rights: Respondents will continue — unchecked — to detain him unlawfully without due process.

26. Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to release Petitioner from detention within 10 days.

27. Petitioner's continued detention is arbitrary and unlawful, and he requests that this Court order his immediate release from ICE custody.

## JURISDICTION

28. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

29. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

30. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

31. Federal District Courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *Zadvydas*, 533 U.S. at 687.

32. Federal courts also have federal question jurisdiction, through the Administrative Procedure Act ("APA"), to deem unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with law. 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (judicial review of agency action under the APA may be proceeded by any applicable form of legal action, including but not limited to habeas corpus). The APA affords a right of review to a person who is adversely affected or harmed by agency action.

## VENUE

33. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner was detained at the ICE office located at 321 Cortez Circle, Camarillo, California, within this district, and remains detained within this district at the Adelanto ICE Processing Center in Adelanto, California. Furthermore, a substantial part of the events or omissions giving rise to this action occurred and continue to occur within this district. No real property is involved in this action. 28 U.S.C. § 1391(e).

## CUSTODY AND REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

34. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith" unless Petitioner is not entitled to relief. Under 28 U.S.C. § 2243, once an order to show cause issues, the respondent must ordinarily file a return within three days, unless the court for good cause allows additional time, not exceeding twenty days.

35. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

36. Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because he was arrested by Respondents and remains in their legal and physical custody at the Adelanto ICE Processing Center in Adelanto, California, within this district.

## PARTIES

37. Petitioner Nazim Ruziev is a native of Tajikistan (then part of the USSR) and a citizen of RUSSIA who has been in immigration detention since August 18, 2026, when he was detained at an ICE appearance in Camarillo, CA, to which he had been summoned by telephone the previous day. ICE did not set bond, served no documents identifying the statutory basis for Petitioner's detention, and Petitioner has received no custody determination by any neutral adjudicator. Petitioner has resided in the United States since March 2023.

38. Respondent JAMES JANECKA is the Warden of the Adelanto ICE Processing Center, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

39. Respondent Thomas P. GILES is the Field Office Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division. As such, Thomas P. GILES exercises custodial authority over Petitioner and is responsible for Petitioner's detention and removal. He is named in his official capacity.

40. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

41. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

42. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

43. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

## LEGAL FRAMEWORK

### ICE'S CONTINUED DETENTION OF PETITIONER, WITHOUT REVIEWING HIS CUSTODY UNDER ICE POLICY, VIOLATES THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS.

44. ICE's long-standing policy is to release noncitizens immediately following a grant of asylum or other relief absent exceptional circumstances.

45. Under the *Accardi* doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to

follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. *See Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954) (holding that BIA must follow its own regulations in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures … even where the internal procedures are possibly more rigorous than otherwise would be required.").

46. The requirement that an agency follows its own policies is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977); *see also Morton*, 415 U.S. at 235-36; *United States v. Heffner*, 420 F.2d 809, 813 (4th Cir. 1969).

47. When agencies fail to adhere to their own policies as required by *Accardi*, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, *see Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018), or as a due process violation, *see Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.").

48. Prejudice is generally presumed when an agency violates its own policy. *See Montilla*, 926 F.2d at 167 ("We hold that an alien claiming the INS has failed to adhere to its own

regulations … is not required to make a showing of prejudice before he is entitled to relief. All that needs be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); *Heffner*, 420 F.2d at 813.

49. To remedy an *Accardi* violation, a court may direct the agency to properly apply its policy, *see Damus*, 313 F. Supp. 3d at 343, or a court may apply the policy itself and order relief consistent with the policy. *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained … while ICE attempts to remedy its failure").

50. Here, Petitioner falls squarely into this category: ICE — by re-detaining a released, fully compliant noncitizen without any custody review or individualized determination — has failed to act as required by its procedures and by controlling law, and Petitioner's continued detention requires this Court's intervention.

## CLAIMS FOR RELIEF

### GROUND ONE
### VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS

*Petitioner has the right to challenge the legality of his detention.*

51. The allegations in the above paragraphs are realleged and incorporated herein.

52. Petitioner has due process rights to challenge his detention. *Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (while noncitizens outside the United States' "geographic borders" lack constitutional protections, all "persons" within them are protected by the Due Process Clause, regardless of immigration status); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022) (though constitutional rights of citizens and noncitizens "are not

coextensive," noncitizens are entitled to due process, including to challenge detention pending proceedings).

53. As the Ninth Circuit held, the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. *Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). The Due Process Clause allows Petitioner to challenge his detention.

54. Petitioner challenges his deprivation of liberty and detention, not the adequacy of the procedures the immigration laws afford him with respect to admission. Petitioner is solely challenging his detention — effected at an ICE appearance to which he was summoned by telephone the previous day, without notice, without changed circumstances, and without any bond hearing or individualized custody determination. He is not bringing a constitutional claim with respect to the procedures governing his legal admission into the United States.

55. To the extent Respondents take the extraordinary position that Petitioner has no due process rights at all, that is unsupported by law and would have gruesome practical consequences: "If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment." *Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc); *see also Jean v. Nelson*, 472 U.S. 846, 874 (1985) (Marshall, J., dissenting). Thus, there is no question that

Petitioner has the right to challenge the constitutionality of his prolonged detention under the Due Process Clause of the Fifth Amendment of the Constitution.

56. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g., Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk or a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

57. This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. *See, e.g., Karakhanyan v. Warden of Otay Mesa Detention Center*, 3:25-cv-03454-JO-MMP; *Romik Parunakyan v. Warden of Otay Mesa Detention Center*, 25-cv-3739-LL-MSB; *L.S. v. Warden of Otay Mesa Detention Center*; *M.F. v. Warden of Otay Mesa Detention Center*, 3:25-cv-3599-CAB-MSB; *Vikas Kumar v. Christopher Larose, Warden, Otay Mesa Detention Center*, 25-CV-3796 JLS (DDL); *Aigul Kazybayeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00421-GPC-MMP; *Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00423-GPC-MSB; *Dugar Dambaev v. Warden, Imperial Detention Center*, 26-cv-

1182-JO-SBC; *Roman T. v. Warden, Golden State Annex Detention Facility*, 1:26-cv-02385-TLN-JDP.

58. Likewise, in *Liping Zhao v. Christopher J. Larose*, 26-cv-1285-JES-DDL, this Court granted a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting release on recognizance on due process grounds.

59. Furthermore, relief was granted in similar matters. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7-10 (N.D. Cal. 2025); *Pinchi*, 2025 WL 2084921, at *5; *Gonzalez Salazar*, 2025 WL 3063629, at *6; *Abdul Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025); *Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).

60. ICE has violated Petitioner's due process rights by denying Petitioner a lawful, individualized bond determination. Specifically, Respondents detained Petitioner — a noncitizen released into the interior in March 2023 who resided in the United States for approximately three and a half years in full compliance with every condition of his release — at an ICE appearance to which he was summoned by telephone, without any finding, let alone one supported by clear and convincing evidence, that he is a danger to the community or a flight risk.

61. As a remedy, this Court should order Petitioner's immediate release from custody on the conditions of his preexisting release.

## GROUND TWO
## VIOLATION OF 8 U.S.C. § 1226(a) AND THE DUE PROCESS CLAUSE

*Detention, whether styled as mandatory or discretionary, is subject to constitutional limits.*

62. The allegations in the above paragraphs are realleged and incorporated herein.

63. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

64. Petitioner has an interest in remaining with his community, reuniting with his wife and children — including his son with autism and a seizure disorder, for whom Petitioner is the sole provider — working, and continuing the process of seeking asylum. See *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his release on recognizance, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachment of normal life.").

65. The risk of an erroneous deprivation of Petitioner's liberty interest is high. Petitioner was detained at an ICE appearance to which he was summoned by telephone, and there has been no individualized finding — let alone one supported by clear and convincing evidence — that Petitioner is a danger to the community or a flight risk. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017).

66. Petitioner has no criminal record and has never been arrested or otherwise in criminal trouble. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [him] merely because he is subject to removal proceedings." Saravia, 280 F. Supp. 2d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances — namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." Id. Respondents have not presented — and cannot present — any such evidence.

67. The government's interest in detaining Petitioner is "low." See Pinchi, 2025 WL 2084921, at *5; Matute, 2025 WL 2817795, at *6; Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019). Respondents can identify no legitimate governmental interest served by the continued detention of a released, fully compliant noncitizen.

68. Therefore, because Respondents have continued to detain Petitioner without any bond hearing or individualized custody determination — based on a mechanical application of 8 U.S.C. § 1226(a) to a noncitizen who was released into the interior of the United States and has fully complied with every condition of his release — Petitioner's detention violates the Due Process Clause and is unlawful. See, e.g., Alegria Palma v. Larose, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025); Navarro Sanchez, 2025 WL 2770629, at *5.

69. Petitioner's continued detention — imposed without any custody determination and without proper factual or legal foundation — denies Petitioner his due process rights. Respondents have never identified the statutory authority under which they purport to detain Petitioner. Petitioner's detention is governed by 8 U.S.C. § 1226(a), and his detention without any bond hearing or individualized custody determination violates that provision and its implementing regulations, including 8 C.F.R. § 236.1, as well as the Due Process Clause. He must be immediately released.

70. Furthermore, Petitioner is challenging his detention on constitutional grounds, not statutory grounds alone. Whatever detention authority Respondents invoke, Petitioner's detention is unequivocally subject to constitutional limits. The Supreme Court has not precluded noncitizens from bringing as-applied constitutional challenges to their detention, including mandatory detention. *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "did not explicitly

address constitutionality arguments." Likewise, while *Demore v. Kim*, 538 U.S. 510 (2003), rejected a facial challenge to mandatory detention under § 1226(c), the Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention, including mandatory detention. *See, e.g., Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. *See, e.g., Vikas Kumar v. Christopher Larose*, 25-CV-3796 JLS (DDL); *Aigul Kazybayeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00421-GPC-MMP; *Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center*, 3:26-cv-00423-GPC-MSB (granting a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting parole on due process grounds).

71. This Court should so hold as well.

## GROUND THREE

## ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

*Petitioner's ongoing detention — effected despite his complete and documented compliance with the conditions of his release, and without any custody review — is arbitrary and capricious, and Petitioner must be released.*

72. The allegations in the above paragraphs are realleged and incorporated herein. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

73. Respondents' detention of Petitioner is arbitrary and capricious because it rests on no individualized assessment whatsoever. Respondents have identified no statutory authority, served no custody-determination documents, and articulated no reasoned basis for detaining Petitioner; unexplained agency action depriving a person of liberty is the

paradigm of arbitrary and capricious action. Petitioner entered the United States on or about March 11, 2023, was released into the interior, resided continuously in Santa Barbara, California, and complied with every reporting requirement imposed on him — monthly in-person check-ins, SmartLINK photographic check-ins, and GPS ankle monitoring — including appearing at the very ICE appearance at which he was detained on August 18, 2026. Petitioner never missed a check-in without cause, and the single absence occasioned by his son's medical emergency was documented with medical records and excused by ICE itself. A noncitizen who does everything the government asks of him cannot rationally be deemed a flight risk. His continued detention is therefore not in accordance with law, must be set aside, and Petitioner must be released.

74. The Ninth Circuit in Singh stressed that "it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual — deprivation of liberty — is so significant." See *Singh*, 638 F.3d at 1205; Black, 103 F.4th at 157-58 (observing that where "an individual's liberty is at stake, the Supreme Court has consistently used [a clear and convincing] evidentiary standard for continued detention"); id. at 159 (reiterating that the government bears the burden of meeting this standard even where an individual is detained pursuant to mandatory detention). This Court should likewise require the government to carry that heavy burden to justify Petitioner's continued civil detention — a burden Respondents cannot meet on this record.

75. Thus, due process and Ninth Circuit precedent require that the government bear the burden of justifying Petitioner's ongoing detention by clear and convincing evidence, and that it do so on a lawful, accurate factual basis — something Respondents cannot do as to a

released, fully compliant noncitizen who has never received any individualized custody determination.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a) Assume jurisdiction over this matter;

b) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

c) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a);

d) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner;

e) In the alternative, order Respondents to provide Petitioner a constitutionally adequate bond hearing before a neutral Immigration Judge, at which (a) the government bears the burden of proving by clear and convincing evidence that Petitioner presents a risk of flight or danger; (b) the adjudicator considers alternatives to detention and Petitioner’s ability to pay a bond; and (c) the adjudicator accounts for the fact that Petitioner was released into the interior of the United States, has resided here for approximately three and a half years, has fully complied with every condition of his release, and is the sole provider for his wife and two young children, including a child with autism and a seizure disorder;

f) Enjoin Respondents from re-detaining Petitioner absent a lawful, individualized custody determination based on materially changed circumstances;

g) Enjoin Respondents from re-detaining Petitioner without first following all applicable statutory and regulatory procedures, including 8 C.F.R. § 236.1;

h) Enjoin Respondents from removing Petitioner unless they provide written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; and

i) Grant any further relief this Court deems just and proper.

DATED 20th day of August 2026

Respectfully submitted,



__________________________

Gary Minevich, Esq.

Attorney for Petitioner